Judgment rendered August 9, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,093-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JAMES T. COLEMAN, JR., ET AL                    Plaintiffs-Appellants

versus

PARISH OF BOSSIER, ET AL                        Defendants-Appellees

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 164,280

Honorable Charles A. Smith, Judge

* * * * *

THE TOUCHSTONE LAW FIRM, APLC          Counsel for Appellants,
By: Dylan D. Touchstone                James T. Coleman, Jr.,
                                       Ludell Wafer, Clair S.
                                       Smith, Loggy Bayou
                                       Properties, LLC, and
                                       Clair S. Smith Family LP

L. GORDON MOSLEY, II                    Counsel for Appellees,
                                        Parish of Bossier, Joe E.
                                        Ford, Jr., and Rachel
                                        Hauser

* * * * *

Before PITMAN, COX, and THOMPSON, JJ.

**COX, J.**

This appeal arises out of the 26th Judicial District Court, Bossier Parish, Louisiana. Plaintiffs, James T. Coleman, Jr., Ludell Wafer, Clair S. Smith, Loggy Bayou Properties, LLC, and Clair S. Smith Family, L.P. (collectively referred to as the "Plaintiffs"), brought suit against the Parish of Bossier, Joe E. Ford, Jr.,[1] and Rachel Hauser,[2] (collectively referred to as the "Defendants"). The Plaintiffs stated that they own properties on the east side of Red Chute Bayou ("Red Chute"), which is only accessible by crossing the Swan Lake Road Bridge ("the Bridge"). The Plaintiffs brought an inverse condemnation suit against the Defendants alleging that the Defendants have pursued abandonment of the Bridge and closed the Bridge, making the Plaintiffs' properties inaccessible. The Defendants argued the Plaintiffs' claims had prescribed, and the district court agreed. For the following reasons, we respectfully reverse the district court's judgment regarding prescription and the classification of the Bridge as a critical infrastructure. We remand this case for further proceedings.

**FACTS**

On March 5, 2021, the Plaintiffs filed their original petition against the Defendants. The Plaintiffs individually own properties on the east side of Red Chute and access their properties by crossing the Bridge. Mr. Coleman is the sole member of Loggy Bayou Properties, LLC. Mr. Smith is the manager of Smith Family Management, LLC, which is the general partner of Clair S. Smith Family, L.P. Loggy Bayou Properties, LLC, and Clair S. Smith Family, L.P., both own recreation/commercial property on the

---

[1] Mr. Ford is the Engineer for Bossier Parish.

[2] Mrs. Hauser is the Custodian of Records for the Bossier Parish Police Jury.

east side of Red Chute.  The Coleman family uses the Loggy Bayou Properties, LLC land for recreation, they have a home on the property, and they have used the property for timber harvesting.  The Smith family uses the Clair S. Smith Family, L.P. property for recreation and hunting, they have a house on the property, and they have also had timber harvesting activities.  The Smith family has received a certificate to operate a family cemetery on their property and several family members are already buried on the property.  Both of these properties are accessed via the Bridge.  Mr. Wafer's home is located on the Smith property, and he has traditionally accessed his home by crossing Red Chute over the Bridge.[3]

Swan Lake Road South and the Bridge are public and maintained by Bossier Parish.  On December 3, 2018, the Parish placed a "bridge closed" sign across the Bridge.  On February 20, 2019, the Bossier Parish Police Jury ("Police Jury") unanimously approved a motion "to authorize the Parish Attorney and Parish Engineer to pursue the potential abandonment of the [Bridge] to all adjacent property owners to maintain the [Bridge]."  The Plaintiffs claim that they received no advance notice of the February 20, 2019, meeting.  The Plaintiffs do not agree that they should be responsible for maintaining the Bridge and state that no formal actions have been taken by the Police Jury to abandon the Bridge.

After the bridge closure sign was placed, the Defendants authorized the dumping of large mounds of dirt on the Bridge to prevent anyone from crossing the Bridge.  Therefore, the Plaintiffs have no way to cross Red Chute and access their properties.  They state that there are no other public

---

[3] Mr. Wafer has a pacemaker and a heart condition that require frequent visits to his cardiologist.

or private roads to their properties, and the only way they can reach their properties is to swim across Red Chute, wade across it, or cross by boat. Currently, Mr. Wafer has a personal vehicle parked on the west side of the Bridge. When he needs to leave his home on the east side of Red Chute, he walks or drives to the Bridge on a tractor and then walks across the Bridge to get to his vehicle.

On October 30, 2020, Mr. Coleman and Mr. Wafer sent a letter to the Parish seeking copies of all the Bridge's inspection reports. On November 2, 2020, the Parish, through Ms. Hauser, sent a response letter that stated the Parish refused to provide copies of the requested reports. The Plaintiffs requested that the Parish be ordered to comply with the records request.

The Plaintiffs alleged that by blocking the Bridge, the Defendants have violated their constitutional rights for failure to give notice to abandon and close the Bridge, which deprived them of their property rights; violated their ministerial duty to keep the Bridge open and available for use by the public; and, violated the provisions of La. R.S. 48:701.[4] The Plaintiffs alleged that the reason the Parish is seeking to abandon the Bridge is to free itself of the expense of maintaining the Bridge. The Plaintiffs requested a temporary restraining order ("TRO") to terminate all actions to abandon the

_____

[4] La. R.S. 48:701 states:
The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto.
Nothing in this Section shall be construed as repealing any of the provisions of special statutes or charters of incorporated municipalities granting the right to close or alter roads or streets.

Bridge and require that the obstacles and dirt dumped on the Bridge be removed.

The requested TRO was signed by the district court on March 8, 2021.

The following is an excerpt from the Police Jury meeting minutes from February 20, 2019, pertaining to the Bridge:

> Commissioner Campbell discussed the failure of an additional bridge on Swan Lake Road over Red Chute Bayou in southern Bossier Parish. He recommended that the parish abandon the bridge and allow property owners that require use of that bridge to maintain it as a private bridge. He further stated that engineers have advised him that the bridge on Swan Lake Road over Red Chute Bayou in southern Bossier Parish could be used for private use.
> …
> Mr. Benton asked if the property owners adjacent to the bridge over Red Chute Bayou on Swan Lake Road in southern Bossier Parish would maintain the bridge if the parish abandoned said bridge. Commissioner Campbell stated that he cannot speak for those property owners, but feels that they would agree to maintain the bridge. He further stated that it is not feasible for the parish to replace the Swan Lake Road Bridge over Red Chute Bayou in southern Bossier Parish due to the projected cost.
> …
> Mr. Smith discussed the bridge over Red Chute Bayou on Swan Lake Road in southern Bossier Parish, and recommended that the police jury consider abandoning the bridge to allow the adjacent property owners to maintain the bridge in order to access their properties.
> …
> After further discussion, motion was made by Mr. Benton, seconded by Mr. Plummer, to … authorize the Parish Attorney and Parish Engineer to pursue the potential abandonment of the Swan Lake Road Bridge over Red Chute Bayou in southern Bossier Parish to allow adjacent property owners to maintain the bridge.
> …
> Mr. Jackson stated that the timber bridge at Swan Lake Road over Red Chute Bayou in southern Bossier Parish has been closed for some time due to being deemed unsafe for the traveling public[.]
>
> Mr. Lewis asked how property owners located west of Red Chute Bayou will be able to access their property if the Swan Lake Road Bridge off Poole Road and the timber bridge on Swan Lake Road over Red Chute Bayou in southern Bossier

Parish are closed and inaccessible. Mr. Jackson stated that the property owners will be required to either use the low water crossing located upstream or use a boat to cross the water.

Votes were cast and the motion carried unanimously.

On July 22, 2021, the Defendants filed exceptions of prescription and improper cumulation of actions. They asserted that the Plaintiffs were put on notice of the bridge closure on December 3, 2018, when signs were posted at the Bridge; therefore, the latest they could claim damages was December 3, 2020. They asserted that the Plaintiffs improperly cumulated actions that involve both ordinary and summary proceedings. They stated that if the court did not sustain their exception of prescription, the ordinary claims should be severed for disposition in separate ordinary proceedings.

The Defendants stated in their memorandum on exceptions that the Bridge was closed on December 3, 2018, "for repair or replacement when federal funds are available through the Federal Off-System Bridge Program." They stated that critical deficiencies were found in a Louisiana Department of Transportation and Development ("DOTD") bridge inspection report performed on the Bridge, and the Bridge was closed the day of the report. They admitted that the Plaintiffs have no other public road access to their properties but stated that Mr. Coleman has alternative access by requesting access through the property of the U.S. Army Corps of Engineers.

The Defendants asserted that the Plaintiffs' claims for damages have prescribed under the two-year prescriptive period of La. R.S. 9:5624 because there has been a "damaging" and not a "taking." They argued that the Plaintiffs were put on notice of the Bridge's closure on December 3, 2018, when the signs were placed on the Bridge. Therefore, their petition, which

was filed March 5, 2021, was filed more than two years after they were put on notice. The Defendants further argued that the doctrine of *contra non valentem* is inapplicable because the only way the Plaintiffs would not have known about the closure is through their own ignorance or neglect.

The Defendants claimed that the Plaintiffs sought relief using summary proceedings by requesting the following: an order of mandamus and/or preliminary injunction; a finding that the Defendants violated public records law; and, an order that the Bridge abandonment cease and obstacles be removed. They assert the Plaintiffs sought relief in ordinary proceedings by alleging the following: their constitutional rights were violated by closing the Bridge; the Defendants violated their ministerial duty to keep the Bridge open and available for public use; and, the Defendants violated La. R.S. 48:701. They asserted that the Plaintiffs' Petition has improperly cumulated actions, and the Plaintiffs' claims for damages should be dismissed as prescribed, or in the alternative, severed for disposition in separate ordinary proceedings.

The Defendants attached the following as exhibits:

- a letter from Mark Coutee, Bossier Parish Police Jury Public Works Director, to DOTD informing them that the Bridge was "closed for repairs;"

- DOTD bridge inspection procedures; a Bossier Parish Bridge Prioritization Report dated July 14, 2015, from Russell J. Coco, Jr, a professional engineer with Forte and Tablada;

- a March 26, 2021, letter from the Off-System Bridge Program Manager stating the Parish's current balance is -$3,742,454 so they will not be allowed to program any new structures at this time;

- meeting minutes from the January 12, 1988, Road Committee of the Police Jury discussing the repair of the Bridge;

- January 19, 2015, Police Jury meeting minutes in which they considered the abandonment of Swan Lake Road South, but denied the request to abandon the road;

- June 15, 2016, Police Jury meeting minutes in which they again discussed the possible abandonment of Swan Lake Road South but determined not to take any action at that time;

- Police Jury meeting minutes from February 20, 2019, as detailed above;

- Police Jury meeting minutes from March 20, 2019, in which it was reported that funds were requested from FEMA to assist with improvements to the Swan Lake Road Bridge off Poole Rd;

- a map of Loggy Bayou Wildlife Management Area ("WMA"); and

- a cost sheet of Swan Lake Road projects from 2005 through June 4, 2021.

The Defendants also included excerpts from Mr. Ford's deposition. Mr. Ford stated that DOTD inspectors inspect the bridges and give them a sufficiency rating. If the sufficiency rating is less than 50 percent, the Parish is required to send their trained inspectors out every six months to determine if there have been any changes to the bridge since the last DOTD inspection. He stated that the Parish was notified by DOTD in December 2018 that the Bridge needed to be closed. He stated that according to the DOTD inspection report, "They noted that there's scouring. They actually did an underwater investigation of the [B]ridge, and they noticed that on both ends there was scour and the banks were sloughing off." Mr. Ford stated that his department closed the Bridge after receiving the report from DOTD, and these types of closures are customarily done without the authorization of the Police Jury. He stated, "My number one contention on this is the [B]ridge is old, it's unsafe, it needs to be replaced. That's obvious."

On July 22, 2021, the Defendants filed their motion for summary judgment ("MSJ"). They asserted that the Plaintiffs cannot establish that

they have 1) deprived the Plaintiffs of their property rights, 2) violated their ministerial duty to keep Swan Lake Road and the Bridge open and available, and 3) violated provisions of La. R.S. 48:701.

The Plaintiffs opposed the Defendants' exceptions of prescription and improper cumulation of actions. They argued that La. R.S. 9:5624 is not the applicable statute because there has been no completion and acceptance of a public work. They argued La. R.S. 13:5111 applies because it is the prescriptive statute for their inverse condemnation claims. They also highlighted that the exception of prescription does not address all of their claims because they are also seeking the production of public records and injunctive relief. Finally, they argued that the exception of improper cumulation of actions should be denied because it was not filed prior to the filing of their answer, as required by La. C.C.P. art. 928(A).

The Plaintiffs filed affidavits and depositions from the individual landowners/residents affected by the closure. They also filed an affidavit of Jeffery Johnson, Manager of the Minden Region of the Louisiana Department of Wildlife and Fisheries, which includes Loggy Bayou WMA. He stated that the Defendants have marked trails on the WMA map that the Plaintiffs could use to access their properties, but those marked trails are not paved and are primarily intended for ATVs and UTVs, not full-sized vehicular traffic. He also stated that portions of those trails are in low-lying areas and prone to flooding annually. Mr. Johnson stated that a portion of the access route is owned by the U.S. Army Corps of Engineers, which would require their permission for use. Finally, he stated that special use permits to allow travel across the WMA must be renewed annually and are evaluated on a case-by-case basis.

The district court rendered its judgment on the exceptions in open court and signed its judgment on August 31, 2021. The district court denied the exception of improper cumulation of actions and continued all other matters to be heard at a trial on the merits.

On February 9, 2022, the district court signed its judgment and ruled that the Bridge's inspection reports are privileged as critical infrastructure information under La. R.S. 44:23.1; therefore, the Plaintiffs' request to produce the reports was denied.

On May 19, 2022, the district court held a hearing on the MSJ and exception of prescription. Both sides argued their positions and the district court issued its ruling. The district court found that the abandonment of the Bridge and removal of the barricades were legislative functions, not judicial functions. The district court then stated:

> As to the motion for summary judgment with regard to damages the Court would deny that portion of it. I do believe the plaintiffs are entitled to claim it; however, this is where the Court differs from what the attorneys said. The exception of prescription in the Court's opinion is valid. I would grant the exception of prescription. It's my belief that the time period began to run when the parish placed on the road the notices that the bridge was closed and that would be under [La. R.S.] 9:5624. And I realize a portion of it [states] that it begins to run after completion and acceptance of the public works. Frankly once they put the sign up saying the road was closed that to me was the work and that was the notice of acceptance. I'm–I don't believe it required them to file something in the public records. I think that notice was sufficient.

On June 21, 2022, the district court signed its final judgment, which partially sustained the Defendants' MSJ. The district court denied all relief to the Plaintiffs that involved the removal of the barriers on the Bridge and repairing/replacing the Bridge. The district court denied the Defendants' MSJ, which sought to dismiss the Plaintiffs' inverse condemnation claims and

9

granted the exception of prescription as it pertained to the inverse condemnation claims under La. R.S. 9:5624. The district court then dismissed the suit with prejudice. The Plaintiffs now appeal.

## DISCUSSION

*Prescription*

The Plaintiffs argue that the Parish's total removal of public road access to their properties is a taking for which the applicable prescriptive statute is La. R.S. 13:5111. They argue that the district court erred in determining that their claims were for damage under La. R.S. 9:5624 and the claims had prescribed. However, they assert that if La. R.S. 9:5624 is the applicable statute, there was never a completion and acceptance of a public work sufficient to commence prescription.

This case presents a classic Catch-22 situation. The Police Jury, as a governing body, has a duty to protect the public and maintain roads and bridges. The Police Jury has limited funds to achieve its goals. If a bridge is deemed unsafe and the Police Jury does not close or repair it and someone gets injured, then the Police Jury could be sued. If the Police Jury closes the only access to a property and cannot repair the bridge, then the Police Jury could be sued for denying access. The Police Jury is in a "swamp" of confusion with what to do in matters like this situation. However, the courts are tasked to determine the law in which the Police Jury must operate without consideration for the funding quagmire in which the Police Jury finds itself.

When evidence is introduced, the trial court's factual findings on the issue of prescription generally are reviewed under the manifestly erroneous-clearly wrong standard of review. When there is no dispute regarding

10

material facts and only the determination of a legal issue, then appellate courts apply a *de novo* standard of review and no deference is afforded to the trial court's legal conclusions. *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-00061 (La. 10/10/21), 333 So. 3d 368; *Sylvan v. BRFHH Monroe, LLC*, 54,202 (La. App. 2 Cir. 4/13/22), 338 So. 3d 576.

When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works. La. R.S. 9:5624. The statute does not define "public works."

Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking. La. R.S. 13:5111.

The material facts are not in dispute; the only question is which prescriptive statute is applicable. The "bridge out" sign was placed on December 3, 2018. The suit was filed March 5, 2021, which is two years and three months after the sign was placed.

La. R.S. 9:5624 requires "the completion and acceptance of the public works" to begin the running of prescription. The Defendants have argued that the placement of the "bridge out" sign and mounds of dirt require the application of La. R.S. 9:5624. We do not agree. The placement of the "bridge out" sign and mounds of dirt does not begin the tolling of prescription in this case. The Defendants admitted that the Bridge has not been abandoned and work will commence to repair the Bridge when funds are available. The closure of the Bridge is ongoing until funds are available; therefore, the public work has not been completed. We find that in this case,

11

there has been no completion and acceptance of a public work. Therefore, the prescriptive period under La. R.S. 9:5624 has not even begun to run in this matter. Until the Bridge is repaired or abandoned, prescription under this statute could not begin to run.

La. R.S. 13:5111 has a three-year prescriptive period. Based on the record before us, the earliest prescription could have begun on a taking claim is when the Bridge was closed and the Plaintiffs' properties became inaccessible. The Bridge was closed two years and three months before the suit was filed, which is within the three-year prescriptive period of La. R.S. 13:5111. However, we make no judgment as to whether the Plaintiffs have proved that a taking has occurred.

For these reasons, the claims have not prescribed under either La. R.S. 9:5624 or 13:5111. We respectfully reverse the district court's judgment granting the Defendants' exception of prescription and remand for further proceedings on the merits of the Plaintiffs' claims.

The Plaintiffs have requested attorney fees in accordance with La. R.S. 13:5111.[5] We decline to issue attorney fees at this time as a judgment has not yet been rendered in their favor for a taking.

---

[5]La. R.S. 13:5111 states, in pertinent part:
A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding.

Because we have reversed the district court's judgment and determined that the Plaintiffs' claims have not prescribed, we need not consider whether the doctrine of *contra non valentem* applies.

*Bridge Inspection Reports*

The Plaintiffs made a public records request of the Parish for inspection reports of the Bridge. They were denied these reports. The Parish argued at the district court that these reports were privileged under La. R.S. 44:23.1. The district court agreed. The Plaintiffs argue that the Bridge is not a "critical infrastructure… asset or facility" for which all public records are privileged.

The determination of whether the Bridge is a critical infrastructure is a finding of fact. A district court's factual findings will not be disturbed unless they are manifestly erroneous or clearly wrong. *Amos v. Taylor*, 51,595 (La. App. 2 Cir. 9/27/17), 244 So. 3d 749. After reviewing the entire record, the appellate court may reverse the trial court's findings if there is no reasonable factual basis for the findings and the record establishes the trial court was manifestly erroneous or clearly wrong. *Id.*

La. R.S. 44:23.1 states:

A. Except as otherwise provided in Subsection B of this Section, nothing in this Chapter shall be construed to require disclosure of records of the Department of Transportation and Development or the Sabine River Authority, state of Louisiana, containing sensitive security information or critical infrastructure information.

B. The provisions of Subsection A of this Section shall not be construed, interpreted, or enforced in any manner to prohibit a member of the legislature in the performance of his official duties from inspecting or examining any record in the custody of the Department of Transportation and Development.

C. For purposes of this Section, the following terms shall have the following meanings:

13

(1) "Critical infrastructure" shall mean a transportation facility or asset that is so vital to the state of Louisiana that the incapacity or destruction of the facility or asset would have a debilitating impact on the security, economy, public health, or public safety of the state.

(2) "Sensitive security information" shall mean security procedures, criminal intelligence information pertaining to terrorist-related activity, or threat or vulnerability assessments created, collected, or obtained in the prevention of terrorist-related activity, including but not limited to physical security information or critical infrastructure information, proprietary information, operational plans, and the analysis of such information, or internal security information.

The question before us is whether the Bridge is a "critical infrastructure" within the meaning of the statute. Whether a bridge is a critical infrastructure must be determined on a case-by-case basis. A critical infrastructure must be 1) a transportation facility or asset; and 2) so vital to the State that its incapacity or destruction would have a debilitating impact on the security, economy, public health, or public safety of the State.

The district court ruled that the reports were privileged because the Bridge is a critical infrastructure. We respectfully disagree. The record does not support a finding that the Bridge meets all of the statutory requirements to be deemed a critical infrastructure. It is clear that any bridge could be classified as a transportation asset, which satisfies the first part of the definition. However, the legislature did not end its definition after "asset," which would make for a broad definition encompassing all transportation facilities and assets. Instead, the legislature narrowed the definition by requiring that those assets and facilities be so vital to the State that their incapacity or destruction would have a debilitating impact on the security, economy, public health, or public safety of the State.

14

In the case *sub judice*, the production of records would not lead to the incapacity or destruction of the Bridge because the Bridge has already been incapacitated for 4 1/2 years and it is not listed as a high priority on the list of bridges to be repaired. Therefore, its incapacity is not so vital that it has a debilitating impact on the security, economy, public health, or safety of the State. We also note that although the Bridge is public, its closure is only debilitating to the Plaintiffs in this suit because it cuts off access to their properties; its incapacity is not debilitating to the State or the public in general. Therefore, we find the district court's ruling that the Bridge is a critical infrastructure to be manifestly erroneous and respectfully reverse that portion of the ruling.

## CONCLUSION

For the foregoing reasons, we respectfully reverse the district court's judgment granting the Defendants' exception of prescription and ruling the bridge inspection reports are privileged under La. R.S. 44:23.1. This case is remanded for further proceedings. Costs of this appeal in the amount of $3,619.55 are assessed to the Defendants/Appellees.

**REVERSED AND REMANDED.**

15